**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARLENE WALTERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUBURN UNIVERSITY,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff **Marlene Walters** brings this civil rights action for relief and damages against Defendant **Auburn University**, based on the following factual allegations and causes of action.

## PRELIMINARY STATEMENT

1. This is an action for sex discrimination and retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*., and for violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

2. Plaintiff, a doctoral student in Auburn's Ph.D. program within the College of Forestry, Wildlife, and Environment, was subjected to a sex-based

1

hostile environment, discrimination on the bases of sex, and retaliation for complaining about sex-based treatment and discrimination.

3. Plaintiff is a woman with nongender conforming identity; Plaintiff uses the pronouns they/them.

4. Plaintiff was treated differently than their male counterparts, including being marginalized, talked over, denied credit, subjected to gender-based comments, and excluded from meaningful participation.

5. Auburn, through Dr. Jonathon Valente, fostered and permitted a male-dominated "boys' club" environment that devalued women and gender nonconforming individuals.

6. When Plaintiff raised concerns about discrimination and inequitable treatment, they were subjected to escalating hostility, intimidation, and retaliation, culminating in a confrontation where they were physically cornered and berated.

7. As a result of Auburn's conduct, Plaintiff was constructively forced to withdraw from their Ph.D. program, losing years of academic progress, funding opportunities, and career advancement.

## **PARTIES**

8. Plaintiff Marlene "Mars" Walters is a former Ph.D. student at Auburn University.

9. Defendant Auburn University is a public university and recipient of federal funds subject to Title IX.

2

**SUBJECT MATTER JURISDICTION AND VENUE**

10.    Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

11.    Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

**FACTUAL ALLEGATIONS**

12.    In August 2023, Plaintiff began a Ph.D. program in Auburn University's College of Forestry, Wildlife, and Environment.

13.    Plaintiff chose this particular program for the opportunity to work with and be mentored by Dr. Jonathon Valente and Dr. Christopher Lepczyk.

14.    Plaintiff began the program on the Department's Inventory and Conservation Project ("ICP 2"); the project was fully funded by a federal research grant, which is rare.

15.    Plaintiff subsequently learned that Dr. Lepczyk would primarily be teaching in Auburn's Honors College for that year and, even though he was technically Plaintiff's co-advisor, Plaintiff would primarily work with and regularly meet with Dr. Valente.

16.    Dr. Lepczyk nonetheless imparted to Plaintiff that the first year of the program should be build foundational knowledge, inclusive of extensive reading on a variety of scientific studies, not just limited to topics related to the ICP2 project.

17.    Dr. Valente served as Plaintiff's primary advisor and exercised substantial control over their research and academic progress, as well as Plaintiff's development and professional opportunities.

18.    Plaintiff also worked closely with a graduate master's program student, Lucas Parvin, and the project manager, Justin Hall, both White, cisgendered males.

19.    From the outset, Plaintiff was treated differently than their male peers.

20.    Dr. Valente frequently talked over Plaintiff in meetings, denied them opportunities to contribute, and excluded them from substantive engagement.

21.    Dr. Valente often dismissed Plaintiff's ideas and contributions, unless repeated or endorsed by their male peers.

22.    Plaintiff performed substantial work on the ICP 2 project, including developing the projects broad experimental design, yet was denied credit for their work by Dr. Valente.

23.    Dr. Valente gave Mr. Hall and Mr. Parvin preferential assignments

4

and opportunities despite their substandard performance.

24.    Dr. Valente cultivated an educational and working environment that was dominated by male students; characterized by sexist comments about women; discussions involving inappropriate sexualized language; disparaging remarks about female colleagues' bodies and abilities; and a culture that favored male bonding at the exclusion of Plaintiff.

25.    For example, in Plaintiff's presence, Dr. Valente made inappropriate comments in lab and field settings, including remarks involving male genitalia and comments about a female student's diet and calling her unfit to perform field work.

26.    Early in Plaintiff's first year, Plaintiff informed Dr. Valente that they used the pronouns they/them and presented themselves in a gender-neutral way.

27.    Throughout the first year of the program, Plaintiff was increasingly uncomfortable being open about their nonconforming gender identity because of the derogatory and sex-based comments Dr. Valente, Mr. Hall, and Mr. Parvin routinely made in Plaintiff's presence.

28.    Dr. Valente told Plaintiff that if they are feeling out of place, they should go to the school's LGBTQ+ center for assistance.

29.     Dr. Valente's dismissiveness of Plaintiffs concerns caused Plaintiff to reasonably perceive the environment as hostile and discriminatory on the basis of sex and gender identity.

30.     Dr. Valente imposed vague and shifting expectations on Plaintiff that were not imposed on male students.

31.     Dr. Valente criticized Plaintiff for failing to meet expectations that he never communicated to Plaintiff.

32.     At the same time, Plaintiff was expected to perform tasks outside their responsibilities, including supporting the male students' work by performing technical assistance work.

33.     When Plaintiff directly asked Dr. Valente whether they were meeting the expectations of the program, Dr. Valente told Plaintiff they were performing adequately, only for Dr. Valente to later criticize Plaintiff without warning.

34.     Often, Dr. Valente would not take my recommendations seriously unless Dr. Lepczyk backed Plaintiff up, despite Plaintiff having years of relevant professional experience on the type of project they were designing.

35.     Plaintiff repeatedly raised concerns to Dr. Valente about being talked over in meetings; him not considering Plaintiff's ideas and suggestions or taking them seriously; and being effectively excluded from the academic process.

6

36.    Plaintiff further complained to Dr. Valente that Plaintiff was the only woman in the room, he did not give Plaintiff the opportunity to contribute to discussion.

37.    Shortly after raising these concerns, Dr. Valente's conduct escalated.

38.    Dr. Valente assigned Plaintiff additional burdensome tasks and framed Plaintiff as the reason for any problems Plaintiff experienced.

39.    Dr. Valente repeatedly throughout the course of Plaintiff's studies and research accused Plaintiff in front of their male peers of not caring about the project when Plaintiff expressed any interest in subjects, research, or concepts outside of the ICP2 project; Plaintiff never saw Dr. Valente accuse the male students of not caring about the project.

40.    In early April 2024, Dr. Valente cornered Plaintiff in a hallway, physically intimidating and berating Plaintiff, while stating Plaintiff as "wasting our time" and did not care about the project.

41.    This confrontation caused Plaintiff significant fear and anxiety.

42.    Following the confrontation, Plaintiff feared further interactions with Dr. Valente and avoided being alone with him.

43.    Plaintiff also sought treatment through Auburn's mental health services for extreme anxiety about interacting with Dr. Valente.

44.    Plaintiff also sought medical treatment from a physiatrist in the wake of the confrontation with Dr. Valente, which resulted in an increase in dosage of Plaintiff's antianxiety and antidepressant medication.

45.    In April 2024, Plaintiff raised concerns to thier co-advisor, Dr. Lepczyk, about Dr. Valente's treatment towards them, including how Dr. Valente used his stature and tone to intimidate Plaintiff and subjected Plaintiff to sex-based discrimination through intimidation, exclusion, and dismissiveness.

46.    Plaintiff asked Dr. Lepczyk if there was a way to complete the program without working directly with Dr. Valente. Dr. Lepczyk confirmed to Plaintiff that Dr. Valente's conduct was unprofessional but indicated there was likely no way to complete the Ph.D. program without working with Dr. Valente.

47.    As such, and in consideration of Plaintiff's deteriorating mental health, Plaintiff was left with no viable option to continue in the program.

48.    On May 1, 2024, Plaintiff resigned from the program, effective May 9, 2024.

49.    Plaintiff's resignation was the direct result of the discriminatory, hostile and retaliatory environment created by Dr. Valente.

50.    Auburn failed to provide Plaintiff with a safe and non-discriminatory educational environment.

8

51.   Auburn failed to provide accessible mechanisms to address the discrimination Plaintiff suffered at Dr. Valente's hands.

52.   In the summer of 2024, after withdrawing from the Ph.D. program, Plaintiff filed a Title IX complaint against Dr. Valente with Auburn's Title IX office based on gender discrimination and retaliation.

53.   Plaintiff has suffered significant damages, including the loss of approximately three years of Ph.D. progress; the loss of participation in a fully funded federal research grant and future career opportunities; relocation expenses; backpay; and emotional distress.

## CAUSES OF ACTION

## COUNT I

**(Title IX Sex Discrimination)**

54.   Plaintiff realleges and incorporates the factual allegations in this complaint as though fully set forth herein.

55.   Plaintiff was subjected to unwelcome conduct based on sex.

56.   The conduct was severe, pervasive, and objectively offensive.

57.   Defendant had actual knowledge of the discriminatory environment and was deliberately indifferent.

58.   As a result, Plaintiff was denied equal access to educational

opportunities.

## COUNT II

### (Title IX Retaliation)

59.    Plaintiff realleges and incorporates the factual allegations in this complaint as though fully set forth herein.

60.    Plaintiff engaged in protected activity by complaining to Dr. Valente and Dr. Lepczyk about sex-based discrimination.

61.    Defendant, through Dr. Valente, subjected Plaintiff to adverse actions, including intimidation, heightened scrutiny, and hostility based on Plaintiff's sex.

62.    The adverse actions were causally connected to Plaintiff's protected activity.

63.    Plaintiff was constructively forced to withdraw from the Ph.D. program as a result of Defendant's actions.

## COUNT III

### (42 U.S.C. § 1983 – Equal Protection - Sex Discrimination)

64.    Plaintiff realleges and incorporates the factual allegations in this complaint as though fully set forth herein.

65.    Dr. Valente, acting under color of state law, intentionally discriminated against Plaintiff on the basis of sex.

10

66.   Plaintiff was treated differently than similarly situated male students.

67.   The discrimination was intentional and not justified by any legitimate governmental interest.

68.   Auburn is liable for these violations through its policies, customs, and deliberate indifference.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendant and order the following relief as allowed by law:

1. Enjoin Defendant from engaging in said unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be in violation of applicable law.

2. The award to Plaintiff of compensatory damages under Title IX.

3. The award to Plaintiff of compensatory and punitive damages under Section 1983.

4. The award to Plaintiff of attorney's fees and costs of this action.

5. The award to Plaintiff of prejudgment and post-judgment interest at the highest rate.

6. The award to Plaintiff of such other equitable relief as the Court may deem justified.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 1st day of May, 2026.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

Jerilyn E. Gardner[1]
GA Bar No. 139779
3344 Peachtree Rd. NE
Suite 800, Office #35
Atlanta, GA 30326
jgardner@hkm.com

**Counsel for Plaintiff**

---

[1] Jerilyn E. Gardner will promptly file for admission *pro hac vice* as an attorney of record in this action. Ms. Gardner is licensed in the state of Georgia.